UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MICHAEL F. ALLEVATO, <br><br>          Plaintiff, <br><br> -against- <br><br> DAVID HOWARD; M. WEIG; AND SWITZ, <br><br>          Defendants. | 22-CV-1768 (LTS) <br><br> ORDER TO AMEND |

LAURA TAYLOR SWAIN, Chief United States District Judge:

Plaintiff, who is proceeding *pro se* and is currently incarcerated at Mid-State Correctional Facility, brings constitutional claims under 42 U.S.C. § 1983, arising out of events that occurred while he was incarcerated at Woodbourne Correctional Facility ("Woodbourne"). He alleges that Defendant Woodbourne Superintendent David Howard denied him access to the courts and failed to address his complaints raised in his grievances. He also alleges that Defendants Woodbourne Registered Nurse M. Weig and Woodbourne Physician Assistant Switz failed to treat his medical conditions, which include rashes and shortness of breath. Finally, Plaintiff asserts an "imminent danger claim" arising out of his being housed with other prisoners who he alleges have threatened him.

By order dated April 20, 2022, the Court granted Plaintiff's request to proceed *in forma pauperis* ("IFP"), that is, without prepayment of fees.[1] For the reasons set forth below, the Court grants Plaintiff sixty days from the date of this order to file an amended complaint.

---

[1] Prisoners are not exempt from paying the full filing fee even when they have been granted permission to proceed IFP. *See* 28 U.S.C. § 1915(b)(1).

**STANDARD OF REVIEW**

The Court must dismiss a complaint, or portion thereof, that is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b); *see* Abbas v. Dixon, 480 F.3d 636, 639 (2d Cir. 2007). The Court must also dismiss a complaint when the Court lacks subject matter jurisdiction. *See* Fed. R. Civ. P. 12(h)(3). While the law mandates dismissal on any of these grounds, the Court is obliged to construe *pro se* pleadings liberally, Harris v. Mills, 572 F.3d 66, 72 (2d Cir. 2009), and interpret them to raise the "strongest [claims] that they *suggest*," *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (internal quotation marks and citations omitted) (emphasis in original).

**BACKGROUND**

**A.    Procedural Background**

On January 27, 2022, Plaintiff filed this action in the United States District Court for the Northern District of New York, naming the above-referenced defendants, as well as Shelley Mallozzi, the Director of the Inmate Grievance Program for the New York State Department of Corrections and Community Supervision ("DOCCS"). Plaintiff asserted an access to courts claim against Mallozzi, who is employed by DOCCS in Albany, New York. On March 3, 2022, the Northern District severed the claims brought against Howard, Weig, and Switz, which arose at Woodbourne, and transferred those claims here. The Northern District dismissed with leave to replead the access to courts claim against Mallozzi because Plaintiff had failed to show any injury associated with being denied access to the courts. That court also dismissed the claim against Mallozzi because Plaintiff challenged Mallozzi's handling of Plaintiff's grievances, and a violation of the grievance procedure does not state a claim under the United States Constitution.

(*See* ECF 4, at 10) ("[I]t is well-settled that inmates do not have a constitutional right to state grievance programs.").

On March 3, 2022, this court's Clerk of Court received the severed claims and opened a new civil action, listing Mallozzi, Howard, Weig, and Switz as defendants. On March 11, 2022, this Court directed Plaintiff to submit an updated prisoner authorization and, after he did so, the Court granted his IFP application.

Plaintiff also filed in the Northern District a petition for a writ of *habeas corpus* under 28 U.S.C. § 2254, which is pending. *See Allevato v. Howard*, ECF 9:21-CV-1159 (N.D.N.Y., filed Oct. 22, 2021). That *habeas corpus* proceeding is the subject of Plaintiff's access to courts claim, which is asserted against both Mallozzi and Howard.

B.    **Factual Background**

1.    **Access to courts**

Plaintiff alleges that, because of Howard's conduct, Plaintiff was unable to access the courts to litigate his *habeas* proceeding. He provides three examples of Howard's alleged involvement in this constitutional violation.

First, on November 17, 2021, Howard "was made aware of the lack of Notary services . . . at Woodbourne" but failed to address this problem. (ECF 1, at 4.) Plaintiff had signed up for a notary but "was not called or put on the call-out, and numerous times[,] . . . the notary did not show up at the days and times it was prescribed." (*Id.*) As a result, "papers were delayed or submitted with an assertion that notary was not available at that time." (*Id.*)

Second, in October 2020, Howard "failed to make sure [Plaintiff] received . . . templates [of subpoena duces tecum]," even though Howard "had approved the templates." (*Id.* at 5.) Four months later, on February 25, 2021, "the facility mail room denied [Plaintiff] blank templates of subpoena duces tecum[ ] to receive paperwork, then to be verified by the court while an open

action was in the court. Plaintiff was pr[e]cluded from submitting paperwork to the Court due to this issue." (*Id.*) The complaint suggests that Plaintiff eventually received the subpoena templates, either in February 2021 or June 2021.

Third, Plaintiff alleges that his $5.00 filing fee for his *habeas* proceeding had not been received by the Northern District, even though he instructed the Woodbourne mailroom to mail the check from his prisoner account. According to the Northern District's public docket, Plaintiff's *habeas* proceeding was administratively closed on October 25, 2021, for failure to pay the filing fee, and then reopened on November 1, 2021, after the Northern District received the fee. *See Allevato*, ECF 9:21-CV-1159.

### 2. Failure to treat medical conditions

Plaintiff also brings claims based on Woodbourne medical staff's alleged failure to treat his medical conditions, which Plaintiff suggests were caused by an allergy and his asthma. His conditions include rashes on his face, chest, scalp, and back, as well as shortness of breath. The following facts are drawn from the complaint.

In 2016 and 2018, Plaintiff had his blood tested and learned that he had "elevated concentrations of IgE" which, he alleges, are "generally thought of in the context of allergic disease." (ECF 1, at 7.) During an unidentified time period, Plaintiff requested

> Ibuprofen on numerous occasions for the restriction of his esophagus which make[s] it hard for him to breath as this seems to be an inflammatory response to something the plaintiff is eating as the blood test, and mayo clinic printouts had shown RN Weig and PA Switz.

(*Id.*) Weig, Switz, and Howard, however, "failed to remedy the issues and allow[ed] . . . plaintiff to suffer with his breathing problems, as Mr. Howard is the supervisor[,] he had failed to act to remedy the hurt." (*Id.*)

Plaintiff alleges that Defendants Weig and Switz

> fail[ed] to investigate enough to make an informed decision, delay[ed] my treatment in which . . . has only been for my rashes, causing an interference with my treatment by both RN Weig and PA Switz[,] [who] blam[ed] the soap Plaintiff was using [as the cause of the] rashes and den[ied] blood tests to see what could be causing the rashes such as heavy metal poisoning.

(*Id.*)

Plaintiff indicates that he suffers "shortness of breath after eating certain foods." (*Id.* at 6.) Rather than treat these conditions, however, Weig and Switz "stated to plaintiff on numerous occasions to avoid eating the foods in the mess hall and the foods that trigger his asthma, and to have his family supplement food with packages from home and more money for commissary." (*Id.* at 7.) Plaintiff counters that his asthma "gets worse after eating certain foods in which [he] has to avoid multiple mess hall meals . . . ." (*Id.* at 9.) He also "runs out of his inhaler" and the medical unit fails to handle his requests for a new inhaler properly. (*Id.*)

Finally, Defendants Weig and Switz "denied [Plaintiff] access to a specialist to address [his] health problems." (*Id.* at 6.) "After filing numerous sick call slips and not receiving any treatment or investigation into the issue, with blood tests indicative of an issue present such as allergic disease, plaintiff received no help." (*Id.* at 6.) After two years of delay, however, "Plaintiff went to another facility to see another doctor for his rashes" (*id.*), and has received topical treatments, (*see id.* at 8). Moreover, after Plaintiff contacted "Commissioner Morley," Plaintiff also was examined by a dermatologist and is scheduled to visit a gastroenterologist. (*Id.* at 8.) While Plaintiff did have his blood drawn, he did not receive the results.

Plaintiff asserts that the above-referenced delays in treatment amount to a violation of the Eighth Amendment.

### 3.    Grievances

Plaintiff references the grievances he filed regarding both his access to courts and denial of medical treatment claims, and Howard's alleged failure to address the complaints raised in the grievances. (*See, e.g.*, ECF 1, at 15) ("Mr. Howard . . . was made aware through filed grievances . . . [but] [t]his issue has not been corrected."). Plaintiff states that he personally provided Howard with information associated with his grievances, and that Howard "failed to remedy the issues and allow[ed] for plaintiff to suffer with his breathing problems, as Mr. Howard is the supervisor[,] he had failed to act to remedy the hurt." (*Id.* at 7.)

### 4.    Imminent danger

Plaintiff alleges that being housed with "State Mandates (active or inactive informants for the State and/or Facility)" has placed him in "imminent danger." (*Id.* at 10.) He specifically claims that these other prisoners "do not like [him] and [that he] has had run ins with these individuals . . . [who] have engaged [him] in issues he has no part of . . . ." (*Id.*) He also claims that these individuals have shared his personal information with "dangerous inmates so they may look his case up on the NYSDOCCS website to find the conviction charges . . . ." (*Id.*) Recently, "numerous weapons have been found and multiple K2 (spice) users have been flooded into the dorm as plaintiff has asthma issue and it has been documented the issues with the smoke inside the dorm as well as the bathroom." (*Id.*) "Plaintiff has denied and will continue to deny protective custody PC/IPC." (*Id.*)

At the time of filing the complaint, Plaintiff was incarcerated at Woodbourne, but he has since been transferred to Mid-State Correctional Facility.

**DISCUSSION**

**A.     Access to courts**

The Court construes Plaintiff's allegations that Superintendent Howard denied him access to the services of a notary public and subpoena templates, as well as failed to ensure that the filing fee for Plaintiff's *habeas corpus* proceeding was mailed to the Northern District, as asserting an access to courts claim.

"[T]he Supreme Court has grounded the right of access to the courts in the Privileges and Immunities Clause of Article IV, the Petition Clause of the First Amendment, the Due Process Clauses of the Fifth and Fourteenth Amendments, and the Equal Protection Clause of the Fourteenth Amendment." *Bourdon v. Loughren,* 386 F.3d 88, 95 (2d Cir. 2004).

Prisoners "have a constitutional right of access to the courts," and this right generally "requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." *Bourdon v. Loughren,* 386 F.3d 88, 92-93 (2d Cir. 2004) (quoting *Bounds v. Smith,* 420 U.S. 817, 821, 828 (1977)). "[P]rison law libraries and legal assistance programs are not [constitutionally mandated] ends in themselves, but only the means for ensuring a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts." *Lewis v. Casey,* 518 U.S. 343, 351 (1996) (internal quotation marks omitted).

To state an access to courts claim, a plaintiff must allege facts suggesting that he has a valid underlying cause of action separate from the right of access claim, in which the defendant's actions hindered the litigation of that claim, causing an actual injury to the plaintiff. *See Christopher v. Harbury*, 536 U.S. 403, 415 (2002) (citing *Lewis*, 518 U.S. at 353). Individuals who are imprisoned "cannot establish relevant actual injury simply by establishing that [a]

prison's law library or legal assistance program is subpar in some theoretical sense." *Lewis*, 518 U.S. at 351.

Here, Plaintiff fails to state any facts suggesting that the alleged denials hindered his ability to litigate his *habeas corpus* proceeding, and after reviewing the submissions filed by Plaintiff in his *habeas* proceeding, the Court concludes that the alleged denials had no effect on that proceeding.[2] With respect to Plaintiff's allegations that he was denied access to a notary public, the Court notes that none of the documents he filed required notarization. For example, Plaintiff's petition only required him to "declare (or certify, or verify, or state) under penalty of perjury that the foregoing is true and correct . . . ." *Allevato*, 9:21-CV-1159 (Doc. No. 1, at 15). Even given that notarization was not required, Plaintiff secured the services of a notary and submitted a notarized petition. *Id.* He also submitted 12 more notarized documents, *id.* (Doc. Nos. 5, 7, 10, 12, 14, 15, 19, 23, 25, 29, 44, 47), and submitted only one document without notarization, due to the fact he could not secure the services of a notary, *id.* (Doc. No. 11). Because Plaintiff cannot show that the failure to provide a notary for one of his documents hindered his litigation, he cannot show that Howard denied him access to the courts.

Plaintiff also cannot show that Howard's alleged failure to ensure that Plaintiff received form templates for a subpoena duces tecum – presumably to request documents – hindered his ability to litigate his *habeas corpus* proceeding because such a document is not required in a *habeas* proceeding. In *habeas* proceedings, "[a] party requesting discovery must provide reasons

---

[2] The Court takes judicial notice of the public record of Plaintiff's *habeas corpus* proceedings. *See Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006) ("docket sheets are public records of which the court could take judicial notice"); *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 75 (2d Cir. 1998) ("It is well established that a district court may rely on matters of public record in deciding a motion to dismiss under Rule 12(b)(6).").

for [any discovery] request[ ] [and] [t]he request must also include any proposed interrogatories and requests for admission, and must specify any requested documents." Rule 6 of the Rules Governing Section 2254 Cases. Plaintiff does not state any facts suggesting that his litigation was in any manner affected by his inability to file a subpoena duces tecum or that any documents he sought were denied because he failed to file such a subpoena.

Finally, the *habeas* record does not reflect that the delay in the payment of the filing fee in any way hindered Plaintiff's ability to litigate the claim. This issue, which was addressed by Plaintiff within one week, had no effect on his *habeas corpus* proceeding.

Because Plaintiff has not pleaded facts suggesting that he was hindered from pursuing an arguably meritorious legal claim, Plaintiff fails to state an access to courts claim.

## B.     Medical treatment claims

The Court construes Plaintiff's allegations that Woodbourne correctional staff failed to treat his medical conditions, as a claim pursuant to Section 1983 based on the violation of rights protected by the Eighth Amendment.

To state an Eighth Amendment claim based on inadequate medical care, a plaintiff must allege facts suggesting that correction officials were deliberately indifferent to the plaintiff's serious medical condition. *See Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976). Deliberate indifference is evaluated under a two-pronged test comprised of both objective and subjective components. *See Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011). The objective component requires that a prisoner "show that the conditions, either alone or in combination, pose[d] an unreasonable risk of serious damage to his health." *Darnell v. Pineiro*, 849 F.3d 17, 30 (2d Cir. 2017) (internal quotation marks and citation omitted). The medical condition must be of such "urgency . . . that may produce death, degeneration, or extreme pain." *Charles v. Orange Cnty.*, 925 F.3d 73, 86 (2d Cir. 2019); *see Harrison v. Barkley*, 219 F.3d 132, 136 (2d Cir. 2000)

(holding that the medical need must be a "sufficiently serious" condition that "could result in further significant injury or the unnecessary and wanton infliction of pain" (internal quotation marks and citation omitted)).

The subjective component requires a prisoner to show that the defendant officials acted with a "sufficiently culpable state of mind" in depriving him of adequate medical treatment. *Nielsen v. Rabin*, 746 F.3d 58, 63 (2d Cir. 2014) (citing *Salahuddin v. Goord*, 467 F.3d 263, 280 (2d Cir. 2006). That is, the prisoner must state facts showing that the correctional staff possessed "a state of mind that is the equivalent of criminal recklessness." *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996); *see Farmer v. Brennan*, 511 U.S. 825, 837 (1994) (holding that the subjective component requires that the plaintiff show that a medical professional "was aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed]" and that the officer drew the inference).

Where a medical professional inadvertently or negligently fails to provide adequate care, a prisoner cannot state a claim of a constitutional violation under the Eighth Amendment. *See Estelle*, 429 U.S. at 106. Thus, a "mere disagreement over the proper treatment" is not actionable. *See Chance v. Armstrong*, 143 F.3d 698, 703 (2d Cir. 1998); *see, e.g.*, *Hill*, 657 F.3d at 123 (holding that medical officer who prescribed Motrin rather than stronger pain medication to treat a broken wrist did not have the "culpable state of mind" required to satisfy the subjective component of the deliberate indifference standard).

### 1.    Weig and Switz

Plaintiff fails to state an Eighth Amendment claim against Defendants Weig and Switz because he does not appear to satisfy either component of such a claim. First, Plaintiff does not satisfy the objective component because he states only that he suffers from rashes and shortness of breath, not that his condition poses an unreasonable risk of serious damage to his health. Even

assuming that Plaintiff's condition does pose such a risk to his heath, he does not satisfy the

subjective component because he does not allege that Weig and Switz ignored a serious risk to

his health; rather, he alleges that he and these Defendants disagreed over his treatment for his

medical condition. For example, Plaintiff alleges that he requested blood tests – which he

eventually received at "another facility" – because he believed heavy metal poisoning caused his

rashes. He alleges that Weig and Switz told him that the rashes were probably caused by the soap

he was using. This disagreement as to the origin or treatment of his medical problem cannot,

however, support a viable deliberate indifference claim. *See Chance*, 143 F.3d at 703. Plaintiff's

allegations confirm that Weig and Switz attempted to identify the causes of Plaintiff's medical

conditions. Put simply, Plaintiff does not allege that these Defendants were aware of a serious

medical condition, failed deliberately or recklessly to treat it, and that their failure to treat it

caused a substantial risk of serious harm to him.

### 2.    Howard

Plaintiff brings his medical claim against Howard because Howard "is the supervisor."

(ECF 1, at 7.) To state a claim under Section 1983, however, a plaintiff must allege facts showing

the defendant's direct and personal involvement in the alleged constitutional deprivation. *See*

*Spavone v. N.Y. State Dep't of Corr. Serv.*, 719 F.3d 127, 135 (2d Cir. 2013) ("It is well settled in

this Circuit that personal involvement of defendants in the alleged constitutional deprivations is a

prerequisite to an award of damages under § 1983.") (internal quotation marks omitted). Thus, a

defendant may not be held liable under Section 1983 solely because that defendant employs or

supervises a person who violated the plaintiff's rights. *See Ashcroft v. Iqbal*, 556 U.S. 662, 676

(2009) ("Government officials may not be held liable for the unconstitutional conduct of their

subordinates under a theory of respondeat superior."). Rather, "[t]o hold a state official liable

under § 1983, a plaintiff must plead and prove the elements of the underlying constitutional

violation directly against the official . . . ." *Tangreti v. Bachmann*, 983 F.3d 609, 620 (2d Cir. 2020).

Plaintiff does not allege any facts showing how Superintendent Howard was personally involved in the events underlying his medical claim. Plaintiff's medical claims against this defendant are therefore dismissed for failure to state a claim on which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

## C.    Grievances

To the extent Plaintiff brings claims against Superintendent Howard regarding his response to Plaintiff's grievances filed at Woodbourne, the Court construes the allegation as asserting a procedural due process claim under the Fourteenth Amendment to the United States Constitution.

The Due Process Clause "protect[s] a substantive interest to which [an] individual has a legitimate claim of entitlement." *Holcomb v. Lykens*, 337 F.3d 217, 224 (2d Cir. 2003) (quoting *Olim v. Wakinekona*, 461 U.S. 238, 250 (1983) (internal quotation marks omitted, alterations added). While some "state laws may in certain circumstances create a constitutionally protected entitlement to substantive liberty interests, state statutes do not create federally protected due process entitlements to specific state-mandated procedures." *Id.* (citations omitted).

In the context of a prison grievance program, which is not required by the Constitution, a correctional official's mere failure to comply with state procedural requirements does not give rise to a due process claim. *See, e.g.*, *Brown v. Graham*, 470 F. App'x 11, 2011 WL 933993, *1 (2d Cir. Mar. 21, 2012) (noting that, where prison officials failed to comply with state grievance procedure, a plaintiff cannot state a claim that he "was deprived of any substantive liberty interest"); *Hayes v. Cnty. of Sullivan*, 853 F. Supp. 2d 400, 434 (S.D.N.Y. 2012) (collecting cases); *Roseboro v. Gillespie*, 791 F. Supp. 2d 353, 380 (S.D.N.Y. 2011) (noting that prisoners do

not have a "constitutional right to a prison grievance procedure or to have his grievances investigated") (internal quotation marks and citation omitted); *Torres v. Mazzuca*, 246 F. Supp. 2d 334, 342 (S.D.N.Y. 2003) (finding that "correction officers' failure to properly address [the prisoner's] grievances by conducting a thorough investigation to his satisfaction does not create a cause of action for denial of due process because [the prisoner] was not deprived of a protected liberty interest").

As Plaintiff does not allege facts showing that the alleged failure to comply with the grievance procedure deprived him of any constitutionally-protected rights, Plaintiff fails to state a viable due process claim. The Court therefore dismisses this claim, brought against Howard, for failure to state a claim upon which relief can be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

**D.      Imminent danger**

Plaintiff asserts that an "imminent danger" claim arose during his incarceration at Woodbourne. As he has since been transferred to another facility, it is unclear whether he seeks to pursue any relief associated with this claim. Accordingly, as set forth below, the Court grants Plaintiff leave to state facts in support of such a claim, should he intend to pursue the claim.

**LEAVE TO AMEND**

Plaintiff proceeds in this matter without the benefit of an attorney. District courts generally should grant a self-represented plaintiff an opportunity to amend a complaint to cure its defects, unless amendment would be futile. *See Hill v. Curcione*, 657 F.3d 116, 123-24 (2d Cir. 2011); *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988). Indeed, the Second Circuit has cautioned that district courts "should not dismiss [a *pro se* complaint] without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (quoting *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999)). Because Plaintiff may be able to allege

additional facts to state valid (1) access to court, (2) medical, and (3) imminent danger claims, the Court grants Plaintiff 60 days' leave to amend his complaint to detail his claims.

In the "Statement of Claim" section of the amended complaint form, Plaintiff must provide a short and plain statement of the relevant facts supporting each claim against each defendant. If Plaintiff has an address for any named defendant, Plaintiff must provide it. Plaintiff should include all of the information in the amended complaint that Plaintiff wants the Court to consider in deciding whether the amended complaint states a claim for relief. That information should include:

a) the names and titles of all relevant people;

b) a description of all relevant events, including what each defendant did or failed to do, the approximate date and time of each event, and the general location where each event occurred;

c) a description of the injuries Plaintiff suffered; and

d) the relief Plaintiff seeks, such as money damages, injunctive relief, or declaratory relief.

The Court specifically grants Plaintiff leave to state facts in support of the following claims:

a) **Access to courts claim.** Plaintiff is granted leave to state facts suggesting that Superintendent Howard hindered Plaintiff's ability to litigate an arguably meritorious claim, and that Plaintiff suffered an actual injury because of Howard's conduct.

b) **Medical claim.** Plaintiff is granted leave to state facts suggesting that Weig and Switz were aware of a substantial risk of harm to Plaintiff's health and chose to ignore that risk.

c) **Imminent danger claim.** Plaintiff is granted leave to state facts explaining this claim and the relief that he seeks.

Essentially, Plaintiff's amended complaint should tell the Court: who violated his federally protected rights and how; when and where such violations occurred; and why Plaintiff is entitled to relief.

Because Plaintiff's amended complaint will completely replace, not supplement, the original complaint, any facts or claims that Plaintiff wants to include from the original complaint must be repeated in the amended complaint.

## CONCLUSION

Plaintiff is granted leave to file an amended complaint that complies with the standards set forth above. Plaintiff must submit the amended complaint to this Court's Pro Se Intake Unit within sixty days of the date of this order, caption the document as an "Amended Complaint," and label the document with docket number 22-CV-1768 (LTS). An Amended Civil Rights Complaint form is attached to this order. No summons will issue at this time. If Plaintiff fails to comply within the time allowed, and he cannot show good cause to excuse such failure, the complaint will be dismissed for failure to state a claim upon which relief may be granted.

The Clerk of Court is directed to remove from this action Defendant Shelley Mallozzi because the United States District Court for the Northern District of New York did not transfer to this court the claims brought against Mallozzi.

The Court dismisses the grievance and medical claims brought against Superintendent Howard for failure to state a claim. *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

15

The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore IFP status is denied for the purpose of an appeal. *Cf. Coppedge v. United States*, 369 U.S. 438, 444-45 (1962) (holding that an appellant demonstrates good faith when he seeks review of a nonfrivolous issue).

SO ORDERED.

Dated:   May 16, 2022
         New York, New York

                          /s/ Laura Taylor Swain
                          LAURA TAYLOR SWAIN
                          Chief United States District Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____

_____
Write the full name of each plaintiff.


-against-

_____

_____

_____
Write the full name of each defendant. If you cannot fit the names of all of the defendants in the space provided, please write "see attached" in the space above and attach an additional sheet of paper with the full list of names. The names listed above must be identical to those contained in Section IV.

_____CV_____
(Include case number if one has been assigned)

**AMENDED**
**COMPLAINT**
(Prisoner)

Do you want a jury trial?
☐ Yes    ☐ No

---

**NOTICE**

The public can access electronic court files. For privacy and security reasons, papers filed with the court should therefore *not* contain: an individual's full social security number or full birth date; the full name of a person known to be a minor; or a complete financial account number. A filing may include *only*: the last four digits of a social security number; the year of an individual's birth; a minor's initials; and the last four digits of a financial account number. See Federal Rule of Civil Procedure 5.2.

Rev. 5/20/16

## I.    LEGAL BASIS FOR CLAIM

State below the federal legal basis for your claim, if known. This form is designed primarily for prisoners challenging the constitutionality of their conditions of confinement; those claims are often brought under 42 U.S.C. § 1983 (against state, county, or municipal defendants) or in a "*Bivens*" action (against federal defendants).

☐  Violation of my federal constitutional rights

☐  Other: _____

## II.    PLAINTIFF INFORMATION

Each plaintiff must provide the following information. Attach additional pages if necessary.

First Name                    Middle Initial              Last Name

State any other names (or different forms of your name) you have ever used, including any name you have used in previously filing a lawsuit.

Prisoner ID # (if you have previously been in another agency's custody, please specify each agency and the ID number (such as your DIN or NYSID) under which you were held)

Current Place of Detention

Institutional Address

County, City                          State                    Zip Code

## III.    PRISONER STATUS

Indicate below whether you are a prisoner or other confined person:

☐  Pretrial detainee
☐  Civilly committed detainee
☐  Immigration detainee
☐  Convicted and sentenced prisoner
☐  Other: _____

## IV.     DEFENDANT INFORMATION

To the best of your ability, provide the following information for each defendant. If the correct information is not provided, it could delay or prevent service of the complaint on the defendant. Make sure that the defendants listed below are identical to those listed in the caption. Attach additional pages as necessary.

Defendant 1:

First Name                    Last Name                         Shield #

Current Job Title (or other identifying information)

Current Work Address

County, City                          State                   Zip Code

Defendant 2:

First Name                    Last Name                         Shield #

Current Job Title (or other identifying information)

Current Work Address

County, City                          State                   Zip Code

Defendant 3:

First Name                    Last Name                         Shield #

Current Job Title (or other identifying information)

Current Work Address

County, City                          State                   Zip Code

Defendant 4:

First Name                    Last Name                         Shield #

Current Job Title (or other identifying information)

Current Work Address

County, City                          State                   Zip Code

## V.      STATEMENT OF CLAIM

Place(s) of occurrence: _____

Date(s) of occurrence: _____

**FACTS:**

State here briefly the FACTS that support your case. Describe what happened, how you were harmed, and how each defendant was personally involved in the alleged wrongful actions. Attach additional pages as necessary.

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

**INJURIES:**

If you were injured as a result of these actions, describe your injuries and what medical treatment, if any, you required and received.

_____

_____

_____

_____

_____

_____

## VI.    RELIEF

State briefly what money damages or other relief you want the court to order.

_____

_____

_____

_____

_____

_____

_____

Page 5

## VII.    PLAINTIFF'S CERTIFICATION AND WARNINGS

By signing below, I certify to the best of my knowledge, information, and belief that: (1) the complaint is not being presented for an improper purpose (such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation); (2) the claims are supported by existing law or by a nonfrivolous argument to change existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Federal Rule of Civil Procedure 11.

I understand that if I file three or more cases while I am a prisoner that are dismissed as frivolous, malicious, or for failure to state a claim, I may be denied *in forma pauperis* status in future cases.

I also understand that prisoners must exhaust administrative procedures before filing an action in federal court about prison conditions, 42 U.S.C. § 1997e(a), and that my case may be dismissed if I have not exhausted administrative remedies as required.

I agree to provide the Clerk's Office with any changes to my address. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Each Plaintiff must sign and date the complaint. Attach additional pages if necessary. If seeking to proceed without prepayment of fees, each plaintiff must also submit an IFP application.

_____        _____
Dated                                             Plaintiff's Signature

_____
First Name                        Middle Initial           Last Name

_____
Prison Address

_____
County, City                              State                    Zip Code

Date on which I am delivering this complaint to prison authorities for mailing:    _____